IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BRIAN SHAUGHNESSY, | ) | Civ. No. 09-00051 ACK-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KC RAINBOW DEVELOPMENT CO., | ) | |
| LLC., and ASSOCIATION OF | ) | |
| APARTMENT OWNERS OF MOANA | ) | |
| PACIFIC, | ) | |
| | ) | |
| Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| KC RAINBOW DEVELOPMENT CO., | ) | |
| LLC., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARCHITECTS HAWAII, LTD., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

ORDER DENYING DEFENDANT/THIRD-PARTY PLAINTIFF KC RAINBOW
DEVELOPMENT CO., LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
THIRD-PARTY COMPLAINT AGAINST DEFENDANT/THIRD-PARTY DEFENDANT
ARCHITECTS HAWAII, LTD.

BACKGROUND[1]

On February 24, 2009, Brian Shaughnessy ("Plaintiff")

filed a first amended complaint ("Complaint") against KC Rainbow

---

[1] The facts as recited in this Order are for the purpose of
disposing of Third-Party Plaintiff's motion and are not to be
construed as findings of fact that the parties may rely on in
future proceedings in this case.

Development Corporation, LLC ("KC Rainbow" or "Third-Party Plaintiff").[2/]  KC Rainbow was the developer of the Moana Pacific condominium project, which consists of two 46-floor condominium towers, located at or about 1230 Kapiolani Boulevard in Honolulu, Hawaiʻi ("Property").  Compl. ¶¶ 5-6.  KC Rainbow contracted with Architects Hawaii, Ltd. ("AHL" or "Third-Party Defendant") for architectural services with respect to the Property, in which AHL warranted that its designs would comply with applicable legal requirements.  Third-Party Compl. ¶¶ 6-7.  Plaintiff asserts a claim against KC Rainbow under the Fair Housing Amendments Act of 1998, 42 U.S.C. §§ 3601 et seq., alleging that KC Rainbow "committed an illegal discriminatory practice as defined by the Act by failing to design and construct the dwellings and common area in compliance with applicable requirements."  Compl. ¶¶ 1, 14.  Specifically, Plaintiff asserts that the lanais, bathrooms, and showers of the Property units are "inaccessible and unusable" by individuals with mobility disabilities.  Id. at ¶¶ 9-10.

On April 15, 2009, KC Rainbow filed a third party complaint ("Third-Party Complaint") against AHL.[3/]  The Third-

---

[2/] On January 8, 2010, Plaintiff filed, with leave of Court, a third amended complaint against KC Rainbow (even though he had not yet filed a second amended complaint) which did not alter the Plaintiff's claim but rather was filed to add the Association of Apartment Owners of the Moana Pacific as an indispensable party.

[3/] KC Rainbow filed the Third-Party Complaint after AHL declined to accepted the purported tender of defense as outlined
(continued...)

Party Complaint alleged that AHL wrongfully refused the tender of defense in breach of its obligations under an existing agreement between KC Rainbow and AHL.[4/]  See Third-Party Compl. ¶¶ 6, 14, 18.  The Third-Party Complaint explains that, in January 2005, KC Rainbow and AHL executed an AIA Document B141-1997 Standard Form of Agreement Between Owner and Architect with Standard Form of Architect's Services ("Agreement").  Id. at ¶¶ 6-7; MSJ Mem. at 2-3; Reply at 2.  Although the parties utilized the Standard AIA Form of Agreement, §§ 1.3.7.11 and 1.4.2.2.1 of the Agreement, as well as various other provisions, were specifically negotiated and drafted by attorneys for AHL and KC Rainbow.[5/]  MSJ Mem. at 3

_____

[3/](...continued)
by KC Rainbow's counsel, which requested that AHL pay for KC Rainbow's defense from the claims asserted by Plaintiff.  MSJ Mem. at 4-5 (stating that KC Rainbow sent a letter requesting tender of defense and indemnification on March 3, 2009, and that on April 8, 2009, AHL informed KC Rainbow that AHL would not defend and indemnify KC Rainbow in the present action at that point in time).  Although the parties provided the Court with the letter requesting the tender of defense, the parties did not provide the Court with AHL's letter rejecting KC Rainbow's tender of defense.  The parties did, however, include an e-mail in which counsel for AHL stated "I'll be sending you a confirming letter shortly, however, the decision has been made not to proceed as demanded in your letter."  Motion Mem. CSF Ex. D (e-mail from Roger S. Moseley, counsel for AHL, to Regan Iwao, counsel for KC Rainbow).

[4/] The Agreement did not include a provision requiring KC Rainbow or AHL to first submit their dispute to arbitration or mediation.

[5/] AHL explained:

AHL's current counsel represented AHL during [the
(continued...)

3

n.1, Reply at 3.  KC Rainbow asserts that the Agreement mandates
that AHL must defend and indemnify KC Rainbow against Plaintiff's
claim because the Complaint arises, at least in part, out of
AHL's alleged improper architectural designs and services.

In the Agreement, as part of the Standard AIA Form of
Agreement, AHL warranted that its services would comply with
applicable legal requirements.  Specifically, § 1.2.3.6 provides:

> The Architect [AHL] warrants that its designs,
> documents, and services shall conform to all
> federal, state and local statutes, laws,
> ordinances, codes, rules and regulations governing
> the Project and the Work.  The Architect agrees
> and acknowledges that this duty is non-delegable,
> and the Architect, by signing drawings or
> preparing drawings to submit for purposes of
> building permits shall be deemed to certify that
> it has taken every reasonable measure to ascertain
> what statutes, laws, ordinances, codes, rules and
> regulations are applicable to the project.
> Nothing in this Agreement shall be construed to
> eliminate the Architect's responsibility for
> compliance of its design, its documents, and its
> services provided with local, state and federal
> statutes, laws, ordinances, codes, rules and
> regulations, including but not limited to those
> that relate to hazardous materials, restrictions
> on development of wetlands, and <u>accessibility for</u>

---

[5]/(...continued)
duty to defend and indemnity] negotiations.  At
that time, KC Rainbow was represented by Carl Tom
of Porter Tom Quitiquit Chee & Watts LLP and by
mainland counsel.  AHL's intention in including
the [duty to defend and indemnity] language . . .
was to limit its obligation to KC Rainbow's
attorney's fees and costs to those situations
where it was <u>adjudged</u> responsible for the claimed
defects.

Reply at 3 (emphasis added) (citations omitted).

<u>the physically challenged</u>.

Mot. Mem, Ex. A at § 1.2.3.6 (emphasis added).

Section 1.3.7.11 of the Agreement, which lies at the heart of the instant dispute, was specifically negotiated by the parties.  The provision reads:

> As to claims for which the Architect is determined to be responsible, the Architect shall defend at the Architect's cost any claims asserted by the Contractor or others against the Owner that the Contractor or others asserting the claims maintain arise out of or result from the conduct, actions or failure to act of the Architect [AHL].  The Architect further agrees to indemnify and hold harmless the Owner for any damages, fees, expenses and costs (including, but not limited to, legal fees and expenses and court, mediation and arbitration costs) incurred by the Owner in defending against claims asserted by the Contractor or others against the Owner that the Contractor or others asserting the claims maintain arise out of or result from the conduct, action or failure to act of the Architect, for which the Architect is determined to be responsible.

<u>Id.</u> at § 1.3.7.11.

Elsewhere in the Agreement, there are two additional provisions addressing the duty to defend and indemnification.[6/]

---

[6/] Prior to the hearing, neither KC Rainbow nor AHL addressed the other duty to defend and indemnification provisions in their papers.  At the hearing, the Court inquired as to why the parties had not addressed § 1.4.2.2.1 of the Agreement as it appears highly relevant to the case at bar.  Upon reviewing the provision, KC Rainbow requested additional time to provide the Court with supplemental briefing addressing § 1.4.2.2.1 of the Agreement.  The Court granted this request and asked that both parties file a supplemental memorandum by January 14, 2010, at noon, addressing § 1.4.2.2.1 of the Agreement and also requested that the parties provide the Court with a copy of the Standard
(continued...)

Section 1.4.2.2.1 of the Agreement, which was also specifically negotiated by the parties, provides, in relevant part:

> In addition to the indemnification obligations noted elsewhere in the Agreement, the parties hereto shall indemnify, defend and hold harmless each other for all damages, losses, claims or expenses, including reasonable attorney's fees, that arise as a result, in whole or in part, of the breach of this Agreement, negligence, errors or omissions by the other party, its employees, its agents, or its Consultants.

Id. at § 1.4.2.2.1.

The third apparent duty to defend and indemnity provision is located in Part 2 of the Agreement and provides:

> The Architect shall indemnify, defend, and hold harmless the Owner from and against any and all claims, liabilities and expenses including attorneys' fees, incurred by or asserted against the Owner resulting from the Architect's acts or omissions in the performance of its services described herein.

Agreement Part 2, page 10.  Although KC Rainbow and AHL did not indicate whether this provision of the Agreement was specifically negotiated by the parties, this language was not included in the Standard AIA Form of Agreement used by the parties to negotiate the Agreement.

The Third-Party Complaint alleges breach of contract ("Count I"), breach of the implied covenant of good faith and fair dealing ("Count II"), and negligence ("Count V"), and seeks

---

[6]/(...continued)
AIA Form of Agreement that the parties used to negotiate the Agreement.

specific performance ("Count III"), declaratory relief ("Count
IV"), and indemnity and contribution ("Count VI") as a result of
AHL's alleged breach of the Agreement.  <u>See</u> Third-Party Compl. ¶¶
17-39.

On October 26, 2009, KC Rainbow filed a Motion for
Partial Summary Judgment on the Third-Party Complaint Against
Defendant/Third Party AHL ("Motion").  KC Rainbow seeks summary
judgment on Count I (breach of contract), Count II (breach of the
implied covenant of good faith and fair dealing), and Count IV
(declaratory relief).  <u>Id.</u> at ¶¶ 17-22, 26-29.  KC Rainbow's
Motion, in essence, is a request for the Court to declare that
AHL has a duty to defend KC Rainbow and bear the costs of
litigation in the instant matter.  KC Rainbow's Motion was
accompanied by a Memorandum in Support of Third-Party Plaintiff's
Motion ("Motion Mem.").  The Motion was also accompanied by a
concise statement in support of the Motion ("Motion Mem. CSF").

On December 22, 2009, AHL filed a Memorandum in
Opposition to KC Rainbow's Motion ("Opposition").[7/]  The
Opposition was accompanied by a concise statement in support
("Opposition CSF").

---

[7/] Although the Opposition was due 21 days before the
scheduled hearing date (December 21, 2009) pursuant to D. Haw.
Local Rule 7.4, the Court granted AHL permission to file the
Opposition one day late because AHL's counsel was unaware that
the newly amended Local Rules, as of December 1, 2009, were
effective.

On December 30, 2009, KC Rainbow filed a Reply to AHL's Opposition ("Reply").[8/]

The Court held a hearing on January 11, 2010.

On January 14, 2010, KC Rainbow filed a supplemental brief addressing § 1.4.2.2.1 of the Agreement and included a copy of the Standard AIA Form of Agreement that the parties used to negotiate the Agreement ("KC Rainbow Supp. Mem.").  On the same day, AHL also filed a supplemental brief addressing said issue, which included a copy of the Standard AIA Form of Agreement that the parties used to negotiate the Agreement ("AHL Supp. Mem.").

<u>**STANDARD OF REVIEW**</u>

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses.  <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Summary judgment is therefore appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence

---

[8/] Although the Reply was due 14 days before the scheduled hearing date (December 28, 2009) pursuant to D. Haw. Local Rule 7.4, the Court granted KC Rainbow permission to file the Reply late because KC Rainbow's counsel was unaware that the newly amended Local Rules, as of December 1, 2009, were effective.

is such that a reasonable jury could return a verdict for the
nonmoving party.'" Thrifty Oil Co. v. Bank of Am. Nat'l Trust &
Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (citation
omitted).[9/]  Conversely, where the evidence could not lead a
rational trier of fact to find for the nonmoving party, no
genuine issue exists for trial.  See Matsushita Elec. Indus. Co.,
Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

     The moving party has the burden of persuading the court
as to the absence of a genuine issue of material fact.  Celotex,
477 U.S. at 323; Miller, 454 F.3d at 987.  The moving party may
do so with affirmative evidence or by "'showing'—that is pointing
out to the district court—that there is an absence of evidence to
support the nonmoving party's case." Celotex, 477 U.S. at 325.[10/]
Once the moving party satisfies its burden, the nonmoving party
cannot simply rest on the pleadings or argue that any
disagreement or "metaphysical doubt" about a material issue of

---

[9/] Disputes as to immaterial issues of fact do "not preclude
summary judgment." Lynn v. Sheet Metal Workers' Int'l Ass'n, 804
F.2d 1472, 1483 (9th Cir. 1986).

[10/] When the moving party bears the burden of proof at trial,
that party must satisfy its burden with respect to the motion for
summary judgment by coming forward with affirmative evidence that
would entitle it to a directed verdict if the evidence were to go
uncontroverted at trial. Miller, 454 F.3d at 987. When the
nonmoving party bears the burden of proof at trial, the party
moving for summary judgment may satisfy its burden with respect
to the motion for summary judgment by pointing out to the court
an absence of evidence from the nonmoving party. Id.

fact precludes summary judgment.  See id. at 323; Matsushita
Elec., 475 U.S. at 586; Cal. Arch. Bldg. Prods., Inc. v.
Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).[11/]
The nonmoving party must instead set forth "significant probative
evidence" in support of its position.  T.W. Elec. Serv. v. Pac.
Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).
Summary judgment will thus be granted against a party who fails
to demonstrate facts sufficient to establish an element essential
to his case when that party will ultimately bear the burden of
proof at trial.  See Celotex, 477 U.S. at 322.

When evaluating a motion for summary judgment, the
court must construe all evidence and reasonable inferences drawn
therefrom in the light most favorable to the nonmoving party.
See T.W. Elec. Serv., 809 F.2d at 630-31.[12/]  Accordingly, if
"reasonable minds could differ as to the import of the evidence,"
summary judgment will be denied.  Anderson, 477 U.S. at 250-51.

## DISCUSSION

KC Rainbow moves the Court for partial summary judgment

_____

[11/] Nor will uncorroborated allegations and "self-serving
testimony" create a genuine issue of material fact.  Villiarimo
v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002);
see also T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809
F.2d 626, 630 (9th Cir. 1987).

[12/] At the summary judgment stage, the court may not make
credibility assessments or weigh conflicting evidence.  Anderson,
477 U.S. at 249; Bator v. Hawaii, 39 F.3d 1021, 1026 (9th Cir.
1994).

against Third-Party Defendant AHL on: (1) breach of contract (Count I); (2) breach of the implied covenant of good faith and fair dealing (Count II); and (3) declaratory judgment (Count IV). The Court discusses the merits of each claim in turn.

**I.        Count I:  Breach of Contract**

KC Rainbow first argues that AHL is in breach of the Agreement because the Agreement requires AHL to defend KC Rainbow against Plaintiff's claim and AHL rejected KC Rainbow's tender of defense.

Under Hawai'i law, construction of a contract, where material facts are undisputed, is a question of law for the court.  See Nat'l Union Fire Ins. Co. v. Reynolds, 77 Hawai'i 490, 494, 889 P.2d 67, 71 (App. 1995).  When interpreting a contractual provision, the Court's goal is to determine the intention of the parties.  See Hanagami v. China Airlines, Ltd., 67 Haw. 357, 364, 688 P.2d 1139, 1144 (1984).  "'When the terms of a contract are definite and unambiguous there is no room for interpretation.'"  See id. (quoting Hackfield and Co. v. Grossman, 13 Haw. 725, 729 (1902)).  However, if the parties use language that "leaves some doubt as to the meaning and intention," then the Court will "apply the rules of construction and interpretation in an effort to ascertain the intention of the parties to the contract."  Id.; see also Amfac, Inc. v. Waikiki Beachcomber, 74 Haw. 85, 108, 839 P.2d 10, 24 (1992) (observing

11

that contractual provisions should be interpreted "according to

their plain, ordinary and accepted use in common speech").

### A.        Ambiguity of the Agreement

Section 1.3.7.11 of the Agreement provides:

> As to claims for which the Architect is <u>determined</u>
> <u>to be responsible</u>, the Architect <u>shall defend</u> at
> the Architect's cost any claims asserted by the
> Contractor or others against the Owner that the
> Contractor or others asserting the claims maintain
> arise out of or result from the conduct, actions
> or failure to act of the Architect [AHL].   The
> Architect further agrees to indemnify and hold
> harmless the Owner for any damages, fees, expenses
> and costs (including, but not limited to, legal
> fees and expenses and court, mediation and
> arbitration costs) incurred by the Owner in
> <u>defending</u> against claims asserted by the
> Contractor or others against the Owner that the
> Contractor or others asserting the claims maintain
> arise out of or result from the conduct, action or
> failure to act of the Architect, <u>for which the</u>
> <u>Architect is determined to be responsible</u>.

<u>Id.</u> at § 1.3.7.11 (emphasis added).  Notably, the entire

provision was drafted and negotiated by the parties, as the

Standard AIA Form of Agreement did not include language

addressing the duty to defend and indemnification.   AHL Supp.

Mem. at 2-3.  Section 1.3.7.11 indicates that the "Architect

<u>shall defend</u> at the Architect's cost any claims asserted . . .

[that] arise out of or result from the conduct, actions, or

failure to act of the Architect," but this provision is prefaced

with the requirement that AHL first be "determined to be

responsible." <u>Id.</u> (emphasis added).

KC Rainbow asserts that, under the Agreement, AHL was

required to defend KC Rainbow as soon as Plaintiff filed the Complaint.  Under Hawai'i law, private indemnity contracts are interpreted according to the same principles as insurance contracts.  See Pancakes of Hawaii v. Pomare Properties Corp., 85 Hawai'i 286, 291, 944 P.2d 83, 88 (App. 1997) (expanding the duty to defend based on the complaint allegation rule to non-insurance indemnity contracts); see also City and County of Honolulu v. Churchill, 167 F. Supp. 2d 1143, 1157 (D. Haw. 2000) (holding that the duty to defend arising under an indemnity agreement should be analyzed just as if it had arisen under an insurance policy).[13/]  In Pancakes, the Intermediate Court of Appeals incorporated the complaint allegation rule to apply to private indemnity contracts and observed that an indemnitor's duty to defend is broader than the duty to indemnify and must be determined at the onset of litigation using the complaint allegation rule.  85 Hawai'i at 291, 944 P.2d at 88.  Under the complaint allegation rule, the duty to defend is triggered

---

[13/] AHL did not dispute that duty to defend provisions in private indemnity contracts are to be interpreted under the same principles as insurance contracts in its Opposition. Nevertheless, at the hearing on this matter, AHL argued that insurance contract interpretation principles should not apply to private indemnity contracts.  After reviewing Pancakes, the Court finds that AHL's claim has no merit as the court in Pancakes clearly stated "the same [insurance contract interpretation] principles should apply to non-insurance indemnity contracts because if the duty to defend was determined only after the ultimate issue of liability on each claim has been made . . . there would be nothing left to defend."  85 Hawai'i at 291, 944 P.2d at 88.

whenever the allegations of the complaint raise the possibility that the indemnitor may have a duty to defend.  Id. at 294, 944 P.2d at 91 (holding that the duty to defend is triggered when "any of the allegations in the complaint potentially include conduct" that is covered by the indemnity contract).  In addition, if there is a potential to defend against any of the claims raised in the complaint, the indemnitor must defend against all of the claims brought against the indemnitee.  See id.

AHL asserts that it does not have to defend KC Rainbow because, as required by § 1.3.7.11, it has not yet been "determined to be responsible."[14/]  Opposition at 6-9.  AHL argues that Pancakes and Churchill are distinguishable because the language in the contracts in those cases with respect to

---

[14/] At the hearing, AHL argued that a determination of its responsibility was necessary because the Owner assisted in the design of the building during certain phases of the project.  As such, AHL argues that it may not be responsible for Plaintiff's claim.  This assertion has no merit as the Architect was required to approve any input by the Owner.  Further, § 2.4.5.1 of the Agreement provides, in relevant part:

> Notwithstanding the Owner's Design Assist Contractor, the Architect shall not be relieved of its responsibilities and obligations related to the design of the project.  Accordingly, the Architect shall remain solely responsible for the preparation and interpretation of the Specifications and Drawings and shall have authority over all design and architectural matters relating to the Work.

Agreement at § 2.4.5.1 (emphasis added).

indemnity did not require that the indemnitor first be determined to be responsible.  In <u>Pancakes</u>, the parties agreed that the managing agent of the shopping center "shall indemnify, defend, and hold [the indemnitee] harmless from and against any and all claims . . . arising from any cause whatsover. . . ."  85 Hawai'i at 294, 944 P.2d at 91.[15/]  Similarly, in <u>Churchill</u>, after observing that the "duty to defend arises from <u>the language</u> of the indemnification clause," this Court found that there was a duty to defend because the contract provided that the indemnitor agreed to "<u>defend, indemnify and save and hold harmless</u> the [indemnitee], their successors in trust and assigns, from and against any loss, cost, damage or liability arising from any failure on the part of the Lessee so to pay, observe and perform such obligations," without requiring that the indemnitor first "be determined to be responsible."  167 F. Supp. 2d at 1157 (emphasis added).[16/]  In this case, by contrast, the Agreement

---

[15/]  The indemnification provision in <u>Pancakes</u> read:

> [E]xcept for the willful misconduct or gross negligence of Sofos [the realtor], Pomare Properties [the managing agent of the shopping center], shall indemnify, defend, and hold Sofos harmless from and against any and all claims, demands, losses, liabilities and damages of every kind and nature arising from any cause whatsover. . . .

<u>Pancakes</u>, 85 Hawai'i at 288, 944 P.2d at 85.

[16/]  The agreement in <u>Churchill</u> stated:

(continued...)

indicates that AHL's duty to defend, if such a duty exists at all, does not arise unless it is first "determined to be responsible."

The Court acknowledges that it should "look no further than the four corners of the document to determine whether an ambiguity exists." State Farm Fire & Cas. Co. v. Pacific Rent-All, Inc., 90 Hawai'i 315, 324, 978 P.2d 753, 762 (1999).  After reviewing the Agreement, the Court finds that § 1.3.7.11 of the Agreement, when read in isolation and when read in conjunction with § 1.4.2.2.1 and Part 2 of the Agreement, is ambiguous.  The second sentence of § 1.3.7.11, when viewed alone, is unambiguous as it requires:

> The Architect further agrees to indemnify and hold harmless the Owner for any damages, fees, expenses and costs (including, but not limited to, legal fees and expenses and court, mediation and arbitration costs) incurred by the Owner in defending against claims asserted by the

---

[16]/(...continued)
AMFAC, Inc., [predecessor by merger to Northbrook], a Hawaii corporation . . . does hereby agree, upon demand of the Lessors, and without any requirement that the Lessors first exhaust all remedies against the Lessee, to make good to the Lessors upon demand as the same shall arise or at any time thereafter and to defend, indemnify and save and hold harmless the Lessors, their successors in trust and assigns, from and against any loss, cost, damage or liability arising from any failure on the part of the Lessee so to pay, observe and perform such obligations. . . .

Churchill, 167 F. Supp. 2d at 1157 (emphasis added).

> Contractor or others against the Owner that the
> Contractor or others asserting the claims maintain
> arise out of or result from the conduct, action or
> failure to act of the Architect, for which the
> Architect is determined to be responsible.

Id. at § 1.3.7.11.  The second sentence is an indemnity provision in which AHL agrees to indemnify KC Rainbow for any costs incurred in defending against claims for which AHL is determined to be responsible.  The first sentence, on the other hand, states that AHL will "defend at the Architect's cost," any claims against KC Rainbow that arise out of the conduct or actions of AHL, but only as to claims for which AHL is first "determined to be responsible."  Id.

The first sentence is troublesome, to say the least. The purpose of the duty to defend is to require the indemnitor to defend at its own cost any claims which potentially fall within the agreement.  First Ins. Co. of Hawaii, Inc. v. State, 66 Haw. 413, 417, 665 P.2d 648, 652 (1983) ("An insurer's duty to defend arises whenever there is a potential for indemnification liability of insurer to insured under the terms of the policy." (internal citations omitted)).  Requiring the indemnitor to first be determined to be responsible is in direct conflict with the nature of the duty to defend.  Having said that, the Court observes that this provision was specifically negotiated by both parties and "[i]t is the duty and responsibility of the courts, not to re-write contracts according to their own views of what is

17

practical and fair, but to enforce them in accordance with the evidence and recognized principles of law." <u>United States v. Bethlehem Steel Corp.</u>, 315 U.S. 289, 310 (1942).   In this case, AHL asserts that it specifically intended that this provision limit its duty to defend to cases in which it first be determined responsible.   Opposition CSF, Ex. A, Declaration of Michael L. Biehl at ¶ 2.

In its Reply, KC Rainbow argues that, under Hawai'i law, because the duty to defend must be determined when the complaint is filed, the Court should essentially disregard the limiting phrase which requires that AHL first be "determined to be responsible."   Reply at 4.[17]   In other words, KC Rainbow requests that the Court ignore language that was specifically negotiated by the parties and placed into the Agreement because in other cases, where the language of the contracts established a much broader duty to defend that was not contingent on a

---

[17] KC Rainbow further argues:

> The duty to defend necessarily contemplates that the defense shall be furnished at the onset of the suit.   Indeed, if AHL intended to put off the duty to defend until the lawsuit was finished, it should have deleted all language which alludes to a duty to defend and simply agreed to indemnify KC Rainbow at the conclusion of the litigation.   It makes as much sense to speak of a duty to defend arising only after the suit is over, as it does to speak of a duty to aid arising only after a person is already dead.

Reply at 6.

18

determination of responsibility, Hawai'i courts held that the duty to defend arose from the filing of the complaint. Id. at 4-6. Although KC Rainbow is correct in observing that, for good reason, the duty to defend is usually triggered after the filing of a complaint pursuant to the complaint allegation rule, the duty to defend arises out of the language of the contract and therefore the Court must examine the language of the Agreement to determine the contours of the duty to defend in this instance. See First Ins. Co. of Hawaii, Inc., 66 Haw. at 417, 665 P.2d at 652 ("'The nature of the insurer's duty to defend is purely contractual and depends, in the first instance, on the language of the particular policy involved.'" (citations omitted)); see also Churchill, 167 F. Supp. 2d at 1157 (observing that the "duty to defend arises from the language of the indemnification clause").

In addition, KC Rainbows fails to recognize that the ambiguity not only rests in when the duty to defend arises, but whether a duty to defend, such as the type that existed in Pancakes and Churchill, exists at all.[18/]  Because the duty to

_____

[18/] KC Rainbow argues that "'[a]mbiguity only exists when the contract, taken as a whole, is reasonably subject to differing interpretation.'"  Reply at 4 (citing State Farm Mut. Auto Ins. Co. v. Fermahin, 73 Haw. 552, 836 P.2d 1074 (1993)).  To this end, KC Rainbow argues that the only reasonable interpretation of the Agreement is to construe it such that the duty to defend was triggered after the filing of the Complaint.  Id.  This argument presupposes, however, that a duty to defend, similar to the ones
(continued...)

defend is determined by the language of the Agreement, it is possible that the condition inserted into the Agreement eviscerates the duty to defend in the traditional sense, and that § 1.3.7.11 only serves to indemnify KC Rainbow from AHL for claims as to which AHL is determined to be responsible.[19]

---

[18]/(...continued)
in <u>Pancakes</u> and <u>Churchill</u>, is created by the Agreement.  As discussed above, however, the Agreement is ambiguous as to both <u>whether</u> there is a duty to defend, and <u>when</u> such a duty to defend would be triggered.

[19] KC Rainbow argues that "AHL's position [] that the addition of the limiting phrase 'claims for which the Architect is determined to be responsible' allows them to circumvent the duty to defend until they are finally determined to be liable for the claims at issue . . . ."  Reply at 5-6.  KC Rainbow asserts that the court in <u>Pancakes</u> rejected this same argument and explains:

> In <u>Pancakes</u>, a managing agent of a shopping center ("Pomare"), argued that it did not have a duty to defend its property manager ("Sofos") executed a management agreement that provided that Pomare would defend and indemnify Sofos for all acts undertaken pursuant to the management agreement, except in cases of "willful misconduct or gross negligence."  Pomare argued that, given the addition of this limiting phrase, it did not have a duty to defend until it was finally determined that Sofos' acts were not the result of willful misconduct or gross negligence.  The court rejected this argument, noting that "this kind of result would defeat the purpose of a duty to defend provision by forcing the indemnitee to shoulder the entire cost of defending suits that raise the potential for indemnification."

Reply at 6 n.1 (citations omitted).  KC Rainbow fails to recognize, however, that the duty to defend is first and foremost determined by the language of the contract.  <u>First Ins. Co. of Hawaii, Inc.</u>, 66 Haw. at 417, 665 P.2d at 652 ("'The nature of
(continued...)

Moreover, the determination of responsibility could be in relation to the duty to defend, rather than for the claim itself.  In other words, the Agreement could require that AHL first be determined responsible <u>to defend</u>, and not require that AHL first be determined responsible for the underlying claim.  To this end, it is possible that the parties intended that KC Rainbow must first obtain a declaratory judgment that AHL is responsible to defend before the duty to defend is triggered.  In sum, this questionably drafted provision is subject to multiple

---

[19]/(...continued) the insurer's duty to defend is purely contractual and depends, in the first instance, on the language of the particular policy involved.'" (citations omitted)).  Although <u>Pancakes</u> is instructive, the case can be distinguished because the language in the contract in <u>Pancakes</u> is different than the language in the contract in the case at bar.  In <u>Pancakes</u>, the contract provided that ". . . except for the willful misconduct or gross negligence of Sofos [the realtor], Pomare Properties [the managing agent of the shopping center], shall indemnify, defend, and hold Sofos harmless from and against any and all claims, demands, losses, liabilities and damages of every kind and nature arising from any cause whatsover."  85 Hawai'i at 288, 944 P.2d at 85.  Therefore, in <u>Pancakes</u>, the Intermediate Court of Appeals for Hawaii applied the complaint-allegation rule and held that there was a duty to defend because there was a potential that Pomare would have to defend its property manager because (1) the complaint made claims that did not involve willful misconduct or gross negligence, and (2) portions of Sofos' alleged conduct were unquestionably leasing activities that fell within the parameters of the agreement.  <u>Id.</u> at 295, 944 P.2d at 92.  In other words, the contract in <u>Pancakes</u> clearly established a duty to defend, the only question was whether the claim fell within the scope of the duty to defend.  In this case at bar, however, it is unclear whether a duty to defend exists at all because the requirement that AHL first be "determined to be responsible" may eviscerate such a duty, thereby making § 1.3.7.11 of the Agreement solely an indemnity provision.

21

interpretations.  The parties could have intended (1) that AHL has a duty to defend KC Rainbow, (2) that AHL has a duty to defend KC Rainbow only after KC Rainbow obtains a declaratory judgment establishing that AHL is responsible (even though this is highly unlikely as it would be of questionable usefulness to Plaintiff because it would first require a determination of AHL's responsibility), or (3) that no duty to defend, as existed in Pancakes and Churchill, exists at all, and § 1.3.7.11 only indemnifies KC Rainbow against claims for which AHL is determined to be responsible.

Further muddying the waters, § 1.4.2.2.1 and Part 2 of the Agreement set forth additional duty to defend and indemnity provisions in the Agreement.[20]  Section 1.4.2.2.1 of the

_____

[20] AHL argues that the Court should only look to § 1.3.7.11 to determine whether a duty to defend exists because, prior to the Court's inquiry at the hearing, KC Rainbow had exclusively based its claim on § 1.3.7.11 of the Agreement.  AHL explains:

> As the Court noted [at the hearing], KC Rainbow's Motion for Partial Summary Judgment refers only to section 1.3.7.11 as the basis for its claim that it is entitled to indemnification and defense. Similarly, KC Rainbow's March 3, 2009 letter demanding indemnification and defense . . . refers to section 1.3.7.11 only.  Finally, KC Rainbow's Third Party Complaint filed April 15, 2009 refers to 1.3.7.11 as the basis for KC Rainbow's demand for indemnification and defense.

AHL Supp. Mem. at 4-5.  To this end, AHL argues that because Fed. R. Civ. P. 8(a) requires "a short plain statement [to] give a defendant fair notice of what the plaintiff's claim is and grounds upon which it rests . . . [i]t would be

(continued...)

Agreement reads:

> In addition to the indemnification obligations noted elsewhere in this Agreement, the parties hereto <u>shall indemnify, defend and hold harmless</u> each other for all damages, losses, claims or expenses, including reasonable attorney's fees, that arise as a result, in whole or in part, of the breach of this Agreement, negligence, errors or omissions by the other party, its employees, its agents, or its Consultant. . . .

Mot. Mem, Ex. A at § 1.4.2.2.1 (emphasis added).[21]  This provision in the Agreement, just like § 1.3.7.11, was

---

[20] (...continued)
inequitable at this point [in time], approximately nine months from the filing of the Third-Party Complaint, to allow KC Rainbow to invoke this provision . . . ." <u>Id.</u> at 5 (citing <u>Bodine Produce, Inc. v. United Farm Workers Organizing Comm.</u>, 494 F.2d 541, 556 (9th Cir. 1974). Without ruling on the issue, the Court observes that the Third-Party Complaint broadly states "<u>[u]nder the Agreement</u>, AHL is responsible for defending and indemnifying KC Rainbow from any and all claims asserted by Plaintiff in the instant action."  Third-Party Complaint ¶ 14.  However, the Court need not address this issue at this time because the Court is not presently ruling as to how these provisions should be construed.  As discussed below, the Court finds that the Agreement is ambiguous and therefore denies KC Rainbow's Motion for Partial Summary Judgment on the Third-Party Complaint.

[21] AHL argues that § 1.3.7.11 of the Agreement should control over § 1.4.2.2.1 of the Agreement because "[i]t is well-settled that when provisions of a contract conflict with each other, the contract should be construed by giving effect to the more specific provision over the more general provisions."  AHL Supp. Brief at 3 (citing <u>Feibusch v. Integrated Device Tech., Inc.</u>, 463 F.3d 880, 885 (9th Cir. 2006)).  The Court, however, does not find that one provision is more specific than the other.  Instead, the Court finds that while the two provisions are <u>conflicting</u> (thus creating an ambiguity), the provisions are simply different.  One provision appears to establish a duty to defend and the other appears to remove such a duty from the Agreement.

specifically drafted and negotiated by the parties, as the

Standard AIA Form of Agreement did not include a duty to defend

or indemnity provision.  KC Rainbow Supp. Mem. at 4-5.

     In addition, Part 2 of the Agreement includes

additional duty to defend and indemnity language, which provides:

> The Architect shall indemnify, defend, and hold
> harmless the Owner from and against any and all
> claims, liabilities and expenses including
> attorneys' fees, incurred by or asserted against
> the Owner resulting from the Architect's acts or
> omissions in the performance of its services
> described herein.

Agreement Part 2, page 10.  Although the parties do not indicate

whether this provision of the Agreement was specifically drafted

and negotiated by the parties, the provision does not appear in

the Standard AIA Form of Agreement.  See KC Rainbow Supp. Mem.

Ex. 2 (Part 10 of 10).

     It is indeed puzzling how the parties could have

negotiated and added to the Standard AIA Form of Agreement these

three conflicting provisions.  Again, the Court observes it must

look to "the four corners of the document to determine whether an

ambiguity exists."  State Farm Fire & Cas. Co., 90 Hawai'i at

324, 978 P.2d at 762; see also Maui Land & Pineapple Co. v.

Dillingham Corp., 67 Haw. 4, 11, 674 P.2d 390, 395 (1984) ("An

agreement should be construed as a whole and its meaning

determined from the entire context and not from any particular

word, phrase, or clause.").  Because the parties included

language similar to <u>Pancakes</u> and <u>Churchill</u> elsewhere in the Agreement, the meaning of § 1.3.7.11 is even more unclear.  As discussed above, the ambiguity of § 1.3.7.11 evidences an attempt by the parties to modify the parameters of the duty to defend, possibly even removing such a duty from the Agreement.  Although § 1.4.2.2.1 of the Agreement is prefaced with the phrase "[i]n addition to the indemnification obligations noted elsewhere in this Agreement," and does not require that AHL first be "determined to be responsible," the Court cannot ignore the fact that elsewhere in the Agreement the parties appear to have specifically intended to condition or eliminate the duty to defend.

For reasons unknown to the Court, the parties specifically drafted and negotiated both § 1.3.7.11 and § 1.4.2.2.1 of the Agreement, even though § 1.3.7.11 effectively eviscerates the duty to defend and § 1.4.2.2.1 appears to create an almost unqualified duty to defend.  To complicate things further, Part 2 of the Agreement, which appears to have been drafted by the partes, contains an <u>additional</u> duty to defend and indemnification provision with broad duty to defend language. The case at bar presents a model example of the need for a fact finder to determine the intent of the parties in drafting an agreement to properly decipher its meaning.  Although the Court is fully aware that § 1.4.2.2.1 and Part 2 of the Agreement

include duty to defend language nearly identical to the language used in <u>Pancakes</u> and <u>Churchill</u>, the Court cannot ignore § 1.3.7.11 which evidences a clear attempt to condition or eliminate the duty to defend.

In sum, not only is the language of § 1.3.7.11 when read in isolation ambiguous, but the duty to defend is even more unclear when § 1.3.7.11, § 1.4.2.2.1, and Part 2 of the Agreement are all read in conjunction.  On the one hand, § 1.3.7.11 appears to eviscerate the duty to defend, while on the other, § 1.4.2.2.1 and Part 2 of the Agreement appear to establish a duty to defend similar to those in <u>Pancakes</u> in <u>Churchill</u>.

After reviewing the four corners of the Agreement, it is unclear whether the Agreement creates a duty to defend at all, and if it does, when that duty arises.  In conclusion, the Court finds that the first sentence of § 1.3.7.11 of the Agreement, when read in conjunction with § 1.4.2.2.1 and Part 2 of the Agreement, is ambiguous.

**B.        Genuine Issues of Material Fact**

Given the Court's conclusion that the language in § 1.3.7.11 of the Agreement is ambiguous, especially with its conflict with § 1.4.2.2.1 and Part 2 of the Agreement, the Court must now conduct a "further inquiry to determine the intention of the parties." <u>See</u> <u>Maui Land & Pineapple Co.</u>, 67 Haw. at 11, 674 P.2d at 395.  "The intent of the parties is a question of fact,

and '[i]nasmuch as the determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable men might differ, summary judgment often will be an inappropriate means of resolving an issue of that character.'" Hanagami v. China Airlines, Ltd., 67 Haw. 357, 364, 688 P.2d 1139, 1144-45 (quoting Bishop Trust Co. v. Central Union Church, 3 Haw. App. 624, 628-29, 656 P.2d 1353, 1356 (1983)).

As noted above, § 1.3.7.11 of the Agreement was specifically negotiated by the parties.  Michael L. Biehl, counsel for AHL, submitted a declaration stating that:

> [He] represented AHL in the negotiations of the
> Agreement.  At that time, KC Rainbow was
> represented by Carl Tom of Porter Tom Quitiquit
> Chee & Watts LLP and by mainland counsel.  AHL's
> intention in including the phrase "As to claims
> for which the Architect is determined to be
> responsible" at the beginning of the indemnity
> provision and "for which the Architect is
> determined to be responsible" at the end of the
> indemnity provision was to limit its obligation to
> pay KC Rainbow's attorneys fees and costs to those
> situations where it was adjudged responsible for
> the claimed defects.

Opposition CSF, Ex. A, Declaration of Michael L. Biehl at ¶ 2. At the hearing on this matter, KC Rainbow acknowledged that AHL was attempting to negotiate the duty to defend out of the Agreement (though KC Rainbow asserts that it would not agree to do so), and that it was possible that KC Rainbow was unaware that the modifications to § 1.3.7.11 of the Agreement eliminated AHL's

duty to defend.[22/]   AHL asserted that it was its intention to eliminate the duty to defend, but since KC Rainbow would not agree to delete the entire first sentence of § 1.3.7.11, AHL negotiated the inclusion of the requirement that AHL first be "determined to be responsible."   Tr. 20:6-12.

Although AHL argues that it did not intend to include the duty to defend in the Agreement, it also specifically

---

[22/] Specifically, at the hearing, Ms. Eblen, counsel for KC Rainbow, stated:

> THE COURT: [W]hy didn't you just negotiate out any duty to defend at all?
>
> MS. EBLEN: Well, that appears to be what it is that Architects is trying to do, to say they have absolutely no duty to defend.  Because if they were to pick up the defense at the end of the litigation, there is nothing left to defend.  It's an absurd result.
>
> THE COURT: I understand that.  You have kind of an oxymoron here.  But what was your client's purpose in putting that provision in there?
>
> MS. EBLEN: Well, our client didn't put that provision in there, as well as I know.
>
> THE COURT: Well, your client agreed to it. . . . [W]hy didn't your client refuse to include that language then?
>
> MS. EBLEN: I don't have an answer for that. Perhaps the words . . . for which the architect is determined to be responsible was not understood by my client as being that there would be no defense in this case.

1/11/10 Transcript of Proceedings ("Tr.") at 4:15-25; 5:1-11 (rough draft of transcript).

negotiated and agreed to § 1.4.2.2.1 and Part 2 of the Agreement which clearly establish a duty to defend.  Thus, to determine the meaning of the Agreement, the Court would need to examine the intent of both parties in drafting the duty to defend and indemnity provisions of the Agreement.  Because "determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable men might differ," summary judgment is not appropriate.  See Hanagami, 67 Haw. at 364, 688 P.2d at 1144-45.

Accordingly, the Court finds that genuine issues of material fact exist with respect to the intention of the parties in drafting the duty to defend and indemnity provisions of the Agreement and therefore denies KC Rainbow's motion for summary judgment as to Count I for breach of contract.[23]

_____

[23] AHL asserts that KC Rainbow did not properly tender the defense to AHL because the manner of the putative tender ". . . deprived AHL from its right to control the defense, including selection of defense counsel."  Opposition at 10 (citing Finley v. Homes Ins. Co., 90 Hawai'i 25, 975 P.2d 1145 (1998)).  AHL is correct in observing that, if AHL has a duty to defend KC Rainbow in the instant case, AHL has the right to control the defense and select counsel.  See Finley 90 Hawai'i at 35, 975 P.2d at 1155. KC Rainbow asserts, however, that "[n]owhere in its tender of defense did KC Rainbow demand that the firm of Goodsill Anderson Quinn and Stifel ("Goodsill") be retained as counsel for KC Rainbow, nor did it demand that AHL pay [at this time] Goodsill's invoices."  Reply at 8.  The Court need not address the issue of whether the tender of defense is proper, however, as the Court has concluded that the Agreement is ambiguous and AHL may not presently have a duty to defend KC Rainbow.  In any event, the filing of the Third-Party Complaint on April 15, 2009, would serve as an effective tender of defense in the instant matter.

II.        Count II:   Breach of the Implied Covenant of Good Faith
           and Fair Dealing

          KC Rainbow asserts that AHL has breached the implied

covenant of good faith and fair dealing because AHL has "refused

to honor its obligation to defend KC Rainbow and in doing so,

forced KC Rainbow to pay for the costs of its defense . . . ."

MSJ Mem. at 12.  "[E]very contract contains an implied covenant

of good faith and fair dealing that neither party will do

anything that will deprive the other of the benefits of the

agreement."  See Best Place, Inc. v. Penn Am. Ins. Co., 82

Hawai'i 120, 123-24, 920 P.2d 334, 337-38 (1996).

          KC Rainbow is correct in observing that, as a result of

AHL rejection of KC Rainbow's tender of defense, KC Rainbow has

incurred litigation costs.  As indicated above, however, the

Agreement is ambiguous and genuine issues of material fact exist

as to the intent of the parties with respect to the duty to

defend and indemnity provisions; therefore AHL may not presently

have a duty to defend KC Rainbow.  Because AHL may not be in

breach of the Agreement, the Court cannot conclude, at this time,

that AHL did not act in good faith by declining KC Rainbow's

tender of defense.  See Best Place, 83 Hawai'i at 123-24, 920

P.2d at 337-38.  In other words, the same genuine issues of

material facts that preclude summary judgment on KC Rainbow's

breach of contract claim also bar summary judgment on KC

Rainbow's breach of the implied covenant of good faith and fair

30

dealing claim.

Accordingly, the Court denies KC Rainbow's Motion for Summary Judgment with respect to Count II (breach of the implied covenant of good faith and fair dealing).

## III.    Count IV:  Declaratory Judgment

Federal courts have discretion whether to exercise jurisdiction over declaratory judgment actions.  See Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800, 803 (9th Cir. 2002) ("[The] decision whether to exercise jurisdiction over a declaratory action lies in the sound discretion of the district court.").  In determining whether to exercise declaratory jurisdiction, federal courts consider whether declaratory judgment would serve a useful purpose in clarifying the legal relations between the parties, and whether it would settle the controversy.  Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 703 (9th Cir. 1992).

KC Rainbow argues that declaratory relief is appropriate in this case because the Court's determination of AHL's duty to defend pursuant to the agreement would clarify the legal relations between AHL and KC Rainbow and settle the dispute over who is responsible for KC Rainbow's defense.  MSJ Mem. at 13.  The Court agrees that, had the Agreement clearly established a duty to defend, a declaratory judgment establishing the relationship between the parties would be appropriate.  However,

because the Agreement is ambiguous, and because resolution of the ambiguity in this instance is a question of fact (the intent of the parties), a declaratory judgment establishing the relationship of the parties would be inappropriate at this time.

Accordingly, the Court denies Defendant's Motion for Summary Judgment with respect to Count IV (declaratory judgment).

**IV.    KC Rainbow's Request for Fees**

KC Rainbow asserts that, because the tender of defense has been wrongfully refused, KC Rainbow is entitled to a reimbursement for all attorney's fees and costs associated with its defense incurred to date, both in the underlying action and this action to enforce the indemnity contract, as well as any reasonable attorneys' fees and costs incurred in the future.  MSJ Mem. at 13 (citing <u>Pancakes</u>, 85 Hawai'i at 299).  AHL's refusal to defend KC Rainbow in the present case may not have been wrongful, however, because the Agreement is ambiguous and genuine issues of material fact exist as to the intent of the parties with respect to the duty to defend and indemnity provisions of the Agreement.  Accordingly, KC Rainbow's request for fees is denied.

<u>**CONCLUSION**</u>

In sum, the Court finds that the duty to defend and indemnity provisions of the Agreement are ambiguous, and that in order to determine the meaning of the duty to defend and

indemnity provisions the Court would need to examine the intent of the parties in drafting these provisions.  Further, because there are genuine issues of material fact that preclude the entry of summary judgment on the breach of contract and breach of the implied covenant of good faith and fair dealing claims, declaratory relief is inappropriate at this time because the relationship of the parties is unclear under the Agreement.

For the foregoing reasons, the Court DENIES KC Rainbow's Motion for Partial Summary Judgment as it relates to claims for breach of contract (Count I) and breach of the implied covenant of good faith and fair dealing (Count II).  In addition, the Court DENIES KC Rainbow's Motion for Partial Summary Judgment for declaratory relief (Count IV).

IT IS SO ORDERED.

Dated:  Honolulu, Hawai'i, January 15, 2010.



_____
Alan C. Kay
Sr. United States District Judge


Shaughnessy v. KC Rainbow Development Co., LLC, Civ. No. 09-00051 ACK-LEK: Order Denying Defendant/Third-Party Plaintiff KC Rainbow Development Co., LLC's Motion for Partial Summary Judgment on the Third-Party Complaint Against Defendant/Third-Party Defendant Architects Hawaii, Ltd.

33