IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BRIAN SHAUGHNESSY, | ) | CIVIL NO 09-00051 ACK-LK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ASSOCIATION OF APARTMENT | ) | |
| OWNERS OF MOANA PACIFIC, KC | ) | |
| RAINBOW DEVELOPMENT CO., | ) | |
| LLC,, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING KC RAINBOW DEVELOPMENT CO., LLC'S
MOTION TO DISQUALIFY MICHAEL L. BIEHL, ESQ. AS COUNSEL
FOR THIRD-PARTY DEFENDANT ARCHITECTS HAWAII, LTD.**

Before the Court is Defendant/Third-Party

Plaintiff/Crossclaim Defendant KC Rainbow Development Co., LLC's

("KC Rainbow") Motion to Disqualify Michael L. Biehl, Esq. as

Counsel for Third-Party Defendant Architects Hawaii, Ltd.

("Motion"), filed on December 28, 2010.  Third-Party

Defendant/Cross-claimant Architects Hawaii, Ltd. ("AHL") filed

its memorandum in opposition on January 14, 2011, and KC Rainbow

filed its reply on January 24, 2011.  This matter came on for

hearing on February 7, 2001.  Appearing on behalf of KC Rainbow

were Audrey Yap, Esq., and Regan Iwao, Esq., and appearing on

behalf of AHL was Michael Biehl, Esq.  After careful

consideration of the Motion, supporting and opposing memoranda,

and the arguments of counsel, KC Rainbow's Motion is HEREBY

GRANTED for the reasons set forth below.

## BACKGROUND

Plaintiff Brian Shaughnessy ("Plaintiff") filed his First Amended Complaint on February 24, 2009 against KC Rainbow, alleging violations of the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.* ("FHA").  The First Amended Complaint alleges that KC Rainbow was responsible for the design and construction of a high-rise condominium complex at or about 1230 Kapiolani Boulevard in Honolulu ("the Property").

On April 15, 2009, KC Rainbow filed its Answer to the First Amended Complaint and a Third-Party Complaint against AHL, KC Rainbow's architect for the Property.  KC Rainbow alleges, *inter alia*, that AHL was responsible for the design and construction oversight of the Property, including compliance with all applicable laws.

Plaintiff filed his Third Amended Complaint on January 8, 2010, adding the Association of Apartment Owners of the Moana Pacific as a defendant.[1]  On February 2, 2010, KC Rainbow filed its Answer to the Third Amended Complaint, with its First Amended Third-Party Complaint.  On June 17, 2010, KC Rainbow filed its Second Amended Third-Party Complaint, adding Hawaiian Dredging Construction Company, Inc. ("Hawaiian

---

[1] Plaintiff apparently never filed a Second Amended Complaint.

Dredging") as a third-party defendant.  AHL's July 8, 2010 answer
to KC Rainbow's Second Amended Third-Party Complaint includes
crossclaims against KC Rainbow and Hawaiian Dredging.

On January 12, 2011, this Court granted KC Rainbow's
motion to bifurcate Plaintiff's FHA claims from the contractual
claims between the other parties.  This Court has yet to set a
trial date for the contractual claims.

## I.   Motion

In the instant Motion, KC Rainbow argues that
Michael Biehl's participation in the underlying events at issue
in this case will make him a material witness to contested issues
in the case.  KC Rainbow asserts that it is likely that Mr. Biehl
will be called to testify as a witness at trial.  Thus, his
continued representation of AHL violates Rule 3.7 of the Hawai`i
Rules of Professional Conduct.

KC Rainbow states that, on March 3, 2009, it demanded
that AHL defend and indemnify it in this action pursuant to the
Standard Form of Agreement Between Owner and Architect with
Standard Form of Architect's Service (AIA Document B-141) with
Changes, dated January 2005 ("Agreement").[2]  The relevant
provision of the Agreement is Section 1.3.7.11, which the parties

---

[2] The Agreement is Exhibit A to the Declaration of Allen
Leong attached to the concise statement of facts in support of KC
Rainbow's Motion for Summary Judgment on Third-Party Complaint
Against Defendant/Third-Party Defendant Architects Hawaii, Ltd.
[Filed 10/26/09 (dkt. no. 38-2).]

specifically negotiated.  It reads:

> As to claims for which the Architect [AHL] is
> determined to be responsible, the Architect shall
> defend at the Architect's cost any claims asserted
> by the Contractor or others against the Owner that
> the Contractor or others asserting the claims
> maintain arise out of or result from the conduct,
> actions or failure to act of the Architect.  T he
> [sic] Architect further agrees to indemnify and
> hold harmless the Owner for any damages, fees,
> expenses and costs (including, but not limited to,
> legal fees and expenses and court, mediation and
> arbitration costs) incurred by the Owner in
> defending against claims asserted by the
> Contractor or others against the Owner that the
> Contractor or others asserting the claims maintain
> arise out of or result from the conduct, action or
> failure to act of the Architect, for which the
> Architect is determined to be responsible.

[Agreement at 9.]

AHL refused to defend KC Rainbow, and KC Rainbow filed the Third-Party Complaint.  On October 26, 2009, KC Rainbow moved for partial summary judgment on the Third-Party Complaint ("Motion for Summary Judgment").  [Dkt. no. 37.]  In the Motion for Summary Judgment, KC Rainbow argued that the Agreement is unambiguous on the duty to defend and indemnify and that KC Rainbow is entitled to judgment as a matter of law on three counts of the Third-Party Complaint.

In AHL's concise statement of facts in support of its memorandum in opposition to the Motion for Summary Judgment, AHL submitted a declaration by Mr. Biehl, dated December 22, 2009

4

("Biehl SJ Declaration").³  [Filed 12/22/09 (dkt. no 49-1).]  The

Biehl SJ Declaration states that he has personal knowledge about

the matters in the declaration and that he represented AHL in

negotiations of the Agreement.  [Biehl SJ Decl. at ¶¶ 1-2.]

Further, he states that:

> AHL's intention in including the phrases "As to
> claims for which the Architect is determined to be
> responsible" at the beginning of the indemnity
> provision and "for which the Architect is
> determined to be responsible" at the end of the
> indemnity provision was to limit its obligation to
> pay KC Rainbow's attorneys fees and costs to those
> situations where it was adjudged responsible for
> the claimed defects.

[Id. at ¶ 2.]  Mr. Biehl also made representations during the

hearing on the Motion for Summary Judgment about the negotiations

of the Agreement:

> THE COURT: Then why didn't you eliminate any
> provision in here, like the first sentence, which
> says that there is a duty to defend?  Why wasn't
> that provision eliminated?
>
> MR. BIEHL: Because you can, in fact, pay for
> the duty to defend after the fact.
>
> THE COURT: Exactly.  And that's what the
> second sentence would do, but what about the first
> sentence?  The first sentence is a duty to defend
> on the part of the architect.
>
> MR. BIEHL: Your Honor, the whole clause is
> construed, by the very first phrase and the very
> first -- the very last phrase, which are
> essentially identical.  And the reason the parties
> stuck that in twice, the beginning and the end,

---

³ KC Rainbow attached the Biehl SJ Declaration to the
instant Motion as Exhibit A to the Declaration of Counsel.

because they wanted the whole paragraph, including the stuff in between, to be controlled by that limiting language.

THE COURT: Do you agree that the first sentence makes no sense whatsoever?

MR. BIEHL: I agree that there are some inherent latent ambiguities in the first sentence. I don't agree that it doesn't make sense.
And I think the point is, Your Honor, that when you are negotiating something like this, you don't always end up with a state-of-the-art provision that makes absolute clear sense.  You have got -- in this particular case, it was counsel from the mainland and Architects Hawaii local counsel going back and forth quite a bit to come up with this ultimate language.  They decided on a reimbursement feature as opposed to a pay up front.

[1/11/10 Hrg. Trans., filed 3/4/10 (dkt. no. 75), at 10-11.[4]]

In his order denying the Motion for Summary Judgment, Senior District Judge Alan C. Kay found "that the duty to defend and indemnity provisions of the Agreement are ambiguous, and that in order to determine the meaning of the duty to defend and indemnity provisions the Court would need to examine the intent of the parties in drafting these provisions."  [Filed 1/15/10 (dkt. no. 65) at 32-33.]

KC Rainbow argues that, allowing Mr. Biehl to proceed as counsel for AHL would violate Rule 3.7(a) of the Hawai`i Rules of Professional Conduct, which, as a general rule, prohibits a lawyer from acting as an advocate in a case where he is likely be

---

[4] KC Rainbow attached this transcript to the instant Motion as Exhibit B to the Declaration of Counsel.

a necessary witness on a disputed issue of material fact.   KC Rainbow contends that Mr. Biehl is a necessary witness to the material disputed facts regarding the parties' intent in negotiating and drafting the Agreement.

KC Rainbow argues that disqualifying Mr. Biehl would not cause AHL substantial hardship.   KC Rainbow emphasizes that discovery is not yet completed and trial on the Third-Party Complaint is still several months away.   Further, if the Court disqualifies Mr. Biehl, AHL will be adequately represented by Mr. Biehl's co-counsel.

## II.   Memorandum in Opposition

In its memorandum in opposition, AHL argues that Mr. Biehl is not a necessary witness in this case.   AHL emphasizes that KC Rainbow has the burden to prove a sufficient basis for disqualification.   AHL contends that, simply because counsel participated in the negotiation of the Agreement does not disqualify him from acting as counsel in the coverage action. AHL urges the Court to consider all relevant factors, including the significance of the matters Mr. Biehl would testify about, the weight his testimony might have in resolving those matters, and other witnesses or documentary evidence on those matters. [Mem. in Opp. at 3-4 (citing Chuck v. St. Paul Fire & Marine Ins. Co., 61 Haw. 552, 560, 606 P.2d 1320, 1325 (1980)).]   AHL argues that Stan Yasumoto was AHL's principal representative in the

7

contract negotiations between KC Rainbow and AHL and that he would be a more appropriate witness to testify regarding AHL's intent in negotiating the Agreement.  AHL therefore contends that Mr. Biehl is not a necessary witness on that issue.

AHL also argues that Mr. Biehl's disqualification would be a substantial hardship because: the contract negotiations involved in this case occurred over five years ago; the case has complex facts; and Mr. Biehl has a unique personal understanding of the issues in the case.  AHL therefore argues that, even if Mr. Biehl is a necessary witness regarding disputed issues of material fact, the exception for substantial hardship to the client should apply and the Court should permit him to continue to represent AHL.

## III. **Reply**

In its reply, KC Rainbow emphasizes that, from the outset of this case, AHL has identified Mr. Biehl as its sole witness with knowledge about the negotiation and interpretation of relevant provisions of the Agreement.  [Reply, Decl. of Counsel, Exh. 1 (AHL's Response to KC Rainbow's First Request for Answers to Interrogs. to AHL, Served on April 30, 2010) at 12-16.]  Further, in opposing the Motion for Summary Judgment, AHL relied exclusively on Mr. Biehl's testimony.  KC Rainbow notes that Mr. Yasumoto has consistently maintained that he does not specifically recall the negotiation of the limiting language in

the indemnity provision.  [Id., Exh. 2 (e-mail dated 11/30/10 to Audrey Yap from Michael Biehl) at 1.]  KC Rainbow argues that Mr. Biehl is a necessary witness because he is the only person who has a present recollection of the negotiation of this provision.

KC Rainbow also argues that AHL will not suffer substantial hardship if the Court disqualifies Mr. Biehl.  KC Rainbow contends that AHL has the burden of establishing substantial hardship and that courts interpret this exception to the witness-advocate rule narrowly.  KC Rainbow argues that AHL's asserted hardships are not enough to invoke the exception.  If the Court disqualifies Mr. Biehl, he can share his factual knowledge with counsel as a percipient witness.

KC Rainbow also argues that AHL cannot assert the substantial hardship defense because it could have reasonably foreseen this conflict.  AHL knew in December 2009 that Mr. Biehl would be a crucial witness in its case.  Further, KC Rainbow emphasizes that it filed a substantially similar motion to the instant Motion on May 5, 2010.  [Dkt. no. 82.]  KC Rainbow agreed to withdraw that motion to facilitate mediation attempts. [Stipulation and Notice of Withdrawal . . . and Order, filed 6/2/10 (dkt. no. 96).]  Under these circumstances, AHL had sufficient opportunity to prepare for the possibility that the Court might disqualify Mr. Biehl.  Further, in the Stipulation and Notice of Withdrawal for the prior motion to disqualify, AHL

9

and its counsel agreed to "waive any and all objections or arguments as to the timing of the motion and any prejudice arising therefrom." [Id. at 3.] KC Rainbow therefore argues that AHL has waived its argument that it will suffer substantial hardship because of the timing of the instant Motion.

## DISCUSSION

"Every member of the bar of this court . . . shall be governed by and shall observe the standards of professional and ethical conduct required of members of the Hawaii State Bar." Local Rule LR83.3. Attorneys who practice in the Hawai`i state courts must comply with the Hawai`i Rules of Professional Conduct. See Rules of the Supreme Court of the State of Hawai`i Rule 2.2. Hawai`i Rule of Professional Conduct 3.7(a) provides:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>> (1) the testimony relates to an uncontested issue;
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>> (3) disqualification of the lawyer would work substantial hardship on the client.

## I.  Necessary Witness

It is undisputed that the interpretation of the Agreement, and particularly of Section 1.3.7.11, is a critical, and hotly contested, issue in KC Rainbow's claims against AHL. AHL, however, argues that Mr. Biehl is not a necessary witness on this issue because there are other witnesses available, including

AHL's representatives, KC Rainbow's representatives, and KC

Rainbow's counsel.  First, AHL's claim is belied by its prior

actions in this case.  In KC Rainbow's First Request for Answers

to Interrogatories to AHL, Served on April 30, 2010, KC Rainbow

asked AHL the following with respect to Section 1.3.7.11:

> a.   Identify each and every person who was
>      involved with and/or has knowledge of the
>      negotiations and/or drafting of the said
>      provision.
> . . . .
> d.   Who specifically proposed the language "As to
>      claims for which the Architect is determined
>      to be responsible?"
> e.   Was the language "As to claims for which the
>      Architect is determined to be responsible"
>      copied or derived from any other source?  If
>      it was copied or derived from another source,
>      please identify and provide copies of the
>      source.

[Reply, Decl. of Counsel, Exh. 1 at 12-13.]  Subject to

objections, the only response AHL provided to each of these

interrogatories was Mr. Biehl's name and contact information.

[Id. at 13-14.]  Similarly, Mr. Biehl was the only person AHL

identified as being involved with and/or having knowledge about

the negotiations and/or drafting of Sections 1.4.2.2.1 and 2.8.3

of the Agreement.  [Id. at 14-16.]  The Biehl SJ Declaration was

the only document that AHL submitted in its concise statement of

facts in support of its memorandum in opposition to the Motion

for Summary Judgment.  [Filed 12/22/09 (dkt. no 49-1).]

    AHL argues that an AHL representative like Stan

Yasumoto would be a more appropriate witness regarding AHL's

11

intent in connection with Section 1.3.7.11, but as recently as November 30, 2010, Mr. Biehl represented to KC Rainbow's counsel that Mr. Yasumoto "recalls our trying to obtain mutuality for the indemnity but does not have a specific recollection regarding the limiting language at the beginning and end of the indemnity paragraph." [Reply, Decl. of Counsel, Exh. 2 (e-mail from Mr. Biehl to Audrey Yap) at 1.]  At the hearing on the Motion, AHL's counsel noted that Mr. Yasumoto had not reviewed documents regarding the negotiation and drafting of the Agreement, and he suggested that this review might refresh Mr. Yasumoto's recollection of the negotiation.  The Court, however, notes that the November 30, 2010 e-mail stated that Mr. Biehl asked Mr. Yasumoto to look for documents relating to the negotiation of the Agreement. [Id.]  If Mr. Yasumoto has not found and reviewed such documents in the two months since that time, the Court is doubtful that Mr. Yasumoto's memory about the negotiation and drafting can be refreshed.  The Court also doubts AHL's representation at the hearing that **KC Rainbow's** counsel and representatives could be witnesses regarding **AHL's** intent in negotiating and drafting Section 1.3.7.11.

Even assuming *arguendo* that Mr. Yasumoto or a KC Rainbow representative or attorney can testify about AHL's intent in negotiating and drafting Section 1.3.7.11, that is not dispositive of the issue whether Mr. Biehl is a necessary

12

witness.   Depending on those witnesses' testimony, it is reasonably foreseeable that either AHL or KC Rainbow will need to call Mr. Biehl as a witness rebut or clarify the other witnesses' testimony.   See Mannhalt v. Reed, 847 F.2d 576, 581 (9th Cir. 1988) (noting that "courts have disqualified counsel pretrial over the defendant's objections if it appears counsel will or should be called as a witness" (citing United States v. Kwang Fu Peng, 766 F.2d 82, 86 (2d Cir. 1985); United States v. DeLuna, 584 F. Supp. 139, 146 (W.D. Mo. 1984))).   The Court therefore FINDS that Mr. Biehl is a necessary witness regarding the disputed material issue of the negotiation and drafting of the Agreement, and in particular of Section 1.3.7.11.

## II.   **Substantial Prejudice**

AHL urges the Court to deny the Motion, even if Mr. Biehl is a necessary witness, because AHL contends that it would suffer substantial prejudice from Mr. Biehl's disqualification.   This argument requires the Court to balance AHL's and KC Rainbow's interests.   The comments to Rule 3.7 state that

> paragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the opposing party.   Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses.   Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified due

13

> regard must be given to the effect of disqualification on the lawyer's client.  It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness.

Haw. R. Prof. Cond. 3.7 cmt. 4.

KC Rainbow is likely to suffer prejudice if the Court denies the Motion because of the importance of Mr. Biehl's testimony to a key issue in this case.  This is particularly true because Mr. Biehl may be the only witness regarding AHL's intent in negotiating and drafting Section 1.3.7.11.  Further, based on the parties' prior arguments in this case, Mr. Biehl's testimony regarding what AHL perceived as the intent of the provision is likely to conflict with the testimony regarding what KC Rainbow's witnesses will testify was their perception of the provision. Rule 3.7(a) prohibits lawyers from acting as both advocate and witness in a trial because, *inter alia*, "[i]t may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof."  Haw. R. Prof. Cond. 3.7, cmt. 2.  AHL argues that, because this case is set for a non-jury trial, there is no danger that the Judge Kay will be confused between Mr. Biehl's roles as advocate and witness.  The Court acknowledges that there is less potential for prejudice in a non-jury trial than in a jury trial, but the Court finds that the potential for prejudice still exists.  This is illustrated by the fact that, during the hearing on the Motion for Summary Judgment,

Mr. Biehl appears to give some factual testimony during the course of his legal argument for AHL.  Counsel for KC Rainbow did not have the opportunity to cross-examine Mr. Biehl about his statements.  [1/11/10 Hrg. Trans., filed 3/4/10 (dkt. no. 75), at 10-11.]  A similar situation is likely to arise if Mr. Biehl is allowed to represent AHL at trial.

AHL also argues that Mr. Biehl's disqualification would cause AHL substantial hardship because: the contract negotiations involved in this case occurred over five years ago; the case has complex facts; and Mr. Biehl has a unique personal understanding of the issues in the case.  At the hearing on the Motion, AHL emphasized that, for approximately the last year, Mr. Biehl is the only counsel who has been actively involved in all stages of this litigation.  At that time, the original lead counsel, Roger Moseley, Esq., stopped working on the case because of health issues, and he is no longer counsel of record in this case.  Jason Woo, Esq., has been involved in the case since June 2010, but AHL represents that his role has been limited.

Insofar as Mr. Biehl has unique factual knowledge of the events giving rise to this case, Mr. Biehl, in the capacity of a percipient witness, can still make that knowledge available to AHL and its counsel.  Insofar has Mr. Biehl has unique knowledge of the legal issues in the case, he can continue to consult with AHL's counsel.  Finally, the Court declines to

15

consider AHL's concern that Mr. Woo is not prepared to litigate
the case as lead counsel because he currently has a limited role
in the case.  At this time, there is no trial date set for the
trial on the contractual claims.  Thus, there will be sufficient
time for Mr. Woo, or other counsel, to become sufficiently
familiar with the case before trial.  More importantly, any
prejudice that AHL may suffer from Mr. Biehl's disqualification
is of its own making.  AHL knew as early as December 2009, and no
later than May 2010, that Mr. Biehl could be a crucial witness in
its case and that he may be disqualified.  It was therefore
incumbent upon AHL to prepare for that possibility.  AHL cannot
argue that the timing of the instant Motion is prejudicial
because AHL agreed to waive that argument as part of the
stipulation to withdraw KC Rainbow's original motion for
disqualification.  [Stipulation and Notice of Withdrawal . . . ,
filed 6/2/10 (dkt. no. 96) at 3.]

        The Court therefore FINDS that AHL will not suffer
undue prejudice if the Court disqualifies Mr. Biehl, such
prejudice can be mitigated and should have been anticipated by
AHL, and KC Rainbow's potential prejudice if the Court denies the
Motion outweighs AHL's prejudice from the disqualification.  The
Court CONCLUDES that Mr. Biehl cannot serve as AHL's counsel in
this matter pursuant to Rule 3.7(a) of the Hawai`i Rules of
Professional Conduct.

### III. <u>Timing of Disqualification</u>

The Court acknowledges that some courts have interpreted rules identical to Hawai`i Rules of Professional Conduct Rule 3.7(a) to apply only to the actual trial.  <u>See</u>, <u>e.g.</u>, <u>Caplan v. Braverman</u>, 876 F. Supp. 710, 711 (E.D. Pa. 1995) (applying Penn. R. Prof. Cond. 3.7(a)).  Nothing in Hawaii's Rule 3.7(a) or its commentary limits the rule's application to jury trials.  Further, the confusion caused by an attorney's dual roles is not limited to live testimony at trial.  A trial is "connected as a seamless web to the ascertainment of issues at the pretrial proceedings, and particularly to the discovery depositions."  <u>Gen. Mill Supply Co. v. SCA Servs., Inc.</u>, 697 F.2d 704, 716 (6th Cir. 1982).  The evidence admitted at trial may include depositions that the attorney participated in or declarations and affidavits that he prepared.

This Court has previously ruled that Rule 3.7 also applies to pretrial proceedings, finding that disqualification for the trial proceedings alone is insufficient to remedy the conflict between the attorney's role as advocate and witness and could result in a prejudicial substitution of counsel immediately before trial.  <u>See Royal Travel, Inc. v. Shell Mgmt. Haw., Inc., et al.</u>, CV 08-00314 JMS-LEK, Order Granting Defendants' Motion to Disqualify Attorney J. Charles Blanton as Counsel for Plaintiffs and to Revoke His Pro Hac Vice, filed 3/12/09 (dkt. no. 50), at

12-13.  This Court therefore FINDS that Mr. Biehl's disqualification applies to all proceedings and should take effect immediately.

**CONCLUSION**

On the basis of the foregoing, KC Rainbow's Motion to Disqualify Michael L. Biehl, Esq. as Counsel for Third-Party Defendant Architects Hawaii, Ltd., filed December 28, 2010, is HEREBY GRANTED.

The Court DIRECTS the Clerk's Office to immediately terminate Mr. Biehl as AHL's counsel of record in this case.  If AHL appeals this order to Senior District Judge Alan C. Kay, AHL can request that he stay the effect of this order during the pendency of the appeal.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 10, 2011.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**BRIAN SHAUGHNESSY V. KC RAINBOW DEVELOPMENT COMPANY, ET AL; CIVIL NO. 09-00051 ACK-LK; ORDER GRANTING KC RAINBOW DEVELOPMENT CO., LLC'S MOTION TO DISQUALIFY MICHAEL L. BIEHL, ESQ. AS COUNSEL FOR THIRD-PARTY DEFENDANT ARCHITECTS HAWAII, LTD.**